UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RYAN SCOTT ADAMS,<br><br>              Plaintiff,<br>     v.<br><br>BRUCE LANUM, *et al.*,<br><br>             Defendants. | CASE NO. 3:24-CV-5034-KKE-DWC<br><br>ORDER DECLINING TO SERVE COMPLAINT |

Plaintiff Ryan S. Adams, proceeding *pro se* and *in forma pauperis*, filed this civil rights action under 42 U.S.C. § 1983. Having reviewed and screened Plaintiff's complaint under 28 U.S.C. §1915A, the Court declines to serve the complaint but provides Plaintiff leave to file an amended pleading by **March 10, 2024**, to cure the deficiencies identified herein.

**I.**     **Background**

On March 12, 2023, Plaintiff injured his hand in an altercation with his former cellmate. Dkt. 7, at 4. Since that day, Plaintiff has sought treatment for his hand, which he believes to be broken and healing badly. *Id.* at 4–6. Although the precise order of events outlined in the complaint is difficult to decipher, Plaintiff discusses the treatment he received at two different

corrections facilities, Clallam Bay Corrections Center ("CBCC") and Washington Corrections Center ("WCC"). *Id.* It appears Plaintiff was satisfied with—or at least he does not complain about—the medical treatment he received at CBCC. *Id.* at 5. Instead, Plaintiff's real concern is with the treatment he received after he was transferred to WCC in September 2023. *Id.*

From the time he arrived at WCC, Plaintiff has been given only Tylenol or Tylenol equivalents to manage his pain. *Id.* He says this care is worse than the treatment he received at CBCC, which included, among other things, ace bandages. *Id.* During his time at WCC, Plaintiff has discussed potential surgeries for his hand with the medical staff, but these discussions have not resulted in a concrete treatment plan. *Id.* Plaintiff identifies Bruce Lanum as the medical staff person who prescribed inadequate pain medication and Adam Clarino as the individual who delayed and/or failed to follow up on a possible surgery. *Id.* Plaintiff explains that the inadequate pain management and delays in treatment at WCC have aggravated his injuries and caused him unnecessary suffering. *Id.* Plaintiff filed several grievances and two "tort claims" about the subpar treatment he continues to receive at WCC. *Id.* at 5, 11.

Separate from the grievances Plaintiff submitted about his hand, he complains that other grievances have been repeatedly mishandled by Lieutenant Tony Donnington, who is a hearings officer at WCC. *Id.* 6–7, 12. Plaintiff claims he suffered emotionally and psychologically from the mismanagement of his grievances. *Id.* at 7.

Plaintiff organizes his factual allegations into two counts. Count I concerns the medical treatment Plaintiff received at WCC and is styled as a claim for "medical negligence" and "medical malpractice" under the Americans with Disabilities Act ("ADA"), the Due Process Clause, and the Eighth and Fourteenth Amendments to the United States Constitution. *Id.* at 4. Count II involves Lt. Donnington's alleged mishandling of Plaintiff's grievances and is styled as

ORDER DECLINING TO SERVE COMPLAINT - 2

a claim for "procedural civil violations" under the Due Process Clause and Equal Protection Clause. *Id.* at 6. Plaintiff seeks compensatory damages on both counts. *Id.* at 9.

## II.    Discussion

Under the Prison Litigation Reform Act of 1995, the Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must "dismiss the complaint, or any portion of the complaint, if the complaint: (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.* at (b); 28 U.S.C. § 1915(e)(2); *see Barren v. Harrington*, 152 F.3d 1193 (9th Cir. 1998).

The Court is required to liberally construe *pro se* documents. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). However, the pleadings must raise the right to relief beyond the speculative level and must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

### A.    ADA Claim

The Court will address Plaintiff's ADA claim before turning to his constitutional claims brought pursuant to 42 U.S.C. § 1983.

Individuals housed in corrections facilities are protected by Title II of the ADA, which prohibits "public entities" from engaging in disability-based discrimination or excluding individuals from the benefits of its services or programs "by reason of" their disability. 42 U.S.C. § 12132; *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007). To state a claim under Title II of the ADA, a plaintiff must plausibly allege the following:

> (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of his disability.

*McGary v. City of Portland,* 386 F.3d 1259, 1265 (9th Cir. 2004) (cleaned up).

For the following analysis, the Court will assume Plaintiff's injured hand qualifies as a "disability" protected by the ADA. *Cf. Sanders v. Arneson Prod., Inc.*, 91 F.3d 1351, 1354 (9th Cir. 1996) (a temporary impairment lasting 4-months with no residual effects was not a disability within the meaning of the ADA). Even so, Plaintiff's ADA claim is deficient because (1) he does not identify a proper defendant for his claim and (2) he fails to allege he was denied the benefits of a public entity's services or programs by reason of—or because of—his disability.

First, the proper defendant for a Title II ADA claim is a "public entity," which is defined as "any State or local government [and] any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1). This language is broad enough to encompass corrections facilities. *Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir. 1997). However, it does not encompass the individuals employed by those facilities. Because Plaintiff only names WCC employees as defendants in his action and not the corrections facility itself, he has not named a proper defendant on his ADA claim.

Second, the ADA prohibits public entities from excluding individuals from the benefits of its services or programs "by reason of" that individual's disability. 42 U.S.C. § 12132. This means, simply having a disability and being discriminated against is not enough to create liability under the ADA; the disability must be the reason behind the discrimination. Here, Plaintiff does not allege his disability is the reason he has been denied the benefits of WCC's medical services. Instead, he alleges he was denied adequate medical services because of his

ORDER DECLINING TO SERVE COMPLAINT - 4

incarcerated status. Dkt. 7, at 5 ("Medical staff have denied me medical care that I would have access to **if I was not incarcerated**.") (emphasis added). This is not the sort of conduct prohibited by the ADA.

Accordingly, Plaintiff's ADA claim is deficient, and it is unlikely he will be able to correct these deficiencies in any amended pleadings.

B.   Official Capacity § 1983 Claims

Turning to Plaintiff's § 1983 claims, construed liberally, Plaintiff has brought his claims for monetary damages against the named defendants in both their official and individual capacities. While Plaintiff may be able to cure the deficiencies in his individual capacity claims (discussed below), it is unlikely he will be able to do so for his official capacity claims.

To state a claim under 42 U.S.C. § 1983, a plaintiff must show: (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a "person" acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). When a claim is brought against an individual in their official capacity, the real party in interest for that claim is the government entity for which they work, not the individual named. In other words, "a suit against a state official in his official capacity is no different from a suit against the State itself." *Doe v. Lawrence Livermore Nat. Lab'y*, 131 F.3d 836, 839 (9th Cir. 1997) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). However, States are not "persons" that can be sued under § 1983. *Doe*, 131 F.3d at 839. As a result, a plaintiff generally cannot sue a state employee in their official capacity under § 1983.

There is one exception to this rule. Under the *Ex Parte Young* doctrine, a state employee may be sued in their official capacity by a plaintiff seeking prospective injunctive relief (*i.e.*, a court order that requires some action, other than the payment of monetary damages, to correct an

ORDER DECLINING TO SERVE COMPLAINT - 5

ongoing constitutional injury). *Id.* (citing *Will*, 491 U.S. at 71 n.10 and *Ex parte Young*, 209 U.S. 123 (1908)). This exception is limited by the Eleventh Amendment, which bars claims for all other forms of relief against such employees. *See Doe*, 131 F.3d at 839; *Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016).

Where, as here, the individually named defendants are employees of the State of Washington, the real party in interest for Plaintiff's official capacity claims is the State itself. Because the State of Washington cannot be sued for monetary damages under § 1983, it is unlikely Plaintiff will be able to correct this deficiency in any amended pleadings.

C. *Individual Capacity § 1983 Claims*

As for Plaintiff's individual capacity claims, the first step in pleading an individual capacity § 1983 claim is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). On step two, a plaintiff must allege facts showing how the individual defendants caused, or personally participated in causing, the harm alleged in the complaint. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). Here, Plaintiff alleges violations of his right to be free from cruel and punishment under the Eighth Amendment, his substantive and procedural Due Process rights under the Fourteenth Amendment, and his right to Equal Protection under the Fourteenth Amendment.[1] The Court will address each in turn.

*Eighth Amendment (Count I).* Starting with his Eighth Amendment claim, Plaintiff may have alleged some of the elements of an Eighth Amendment deliberate indifference claim, but he has failed to connect his alleged injuries to purposeful conduct by Defendants Lanum and Clarino. "Deliberate indifference to serious medical needs of prisoners constitutes the

---

[1] Although Plaintiff does not specify whether he brings his Due Process and Equal Protection claims under the Fifth or Fourteenth Amendments, these claims, which are brought against state employees, are properly analyzed under the Fourteenth Amendment.

ORDER DECLINING TO SERVE COMPLAINT - 6

unnecessary and wanton infliction of pain," which is a violation of the Eighth Amendment's guarantee against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation omitted); *see Hudson v. McMillan*, 503 U.S. 1, 6 (1992). An Eighth Amendment deliberate indifference claim has two elements: (1) the plaintiff had a serious medical need and (2) the defendant responded to that need with deliberate indifference. *See McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir.1997) (en banc).

For the first element, a medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (quoting *Estelle*, 429 U.S. at 104). The following are examples of serious medical needs: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; [and] the existence of chronic and substantial pain" *Id.* at 1059–60.

For the second element, a plaintiff must show the defendant responded to his serious medical need with deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1970). "Deliberate indifference is a high legal standard. A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." *See Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). This second element requires "a purposeful act or failure to act on the part of the defendant." *McGuckin*, 974 F.2d at 1060. In other words, "[a] defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need." *Id.* A prison official, accordingly, will not be found deliberately indifferent to a prisoner's serious medical needs "unless the official knows of and disregards an

ORDER DECLINING TO SERVE COMPLAINT - 7

excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*; *see also Ortez v. Wash. Cnty., State of Or.*, 88 F.3d 804, 809 (9th Cir. 1996) (liability arises under § 1983 only if defendants are alleged to participate in, direct, or knowingly fail to prevent a constitutional violation).

Here, Plaintiff may have sufficiently pleaded the existence of a serious medical need. In his Complaint, Plaintiff alleges he suffers severe, chronic pain which has prevented him from using his dominant hand in everyday activities. Dkt. 7, at 4–6. Additionally, Plaintiff believes medical providers at other corrections facilities have taken his injuries more seriously than those at WCC, demonstrating that a reasonable doctor may consider his injuries worthy of comment or treatment. *See id.* at 5 (alleging that CBCC medical staff approved more substantial treatment plans for his hand). Although the Court need not resolve the issue at this stage, it will assume Plaintiff plausibly alleged his injured hand is a serious medical need.

As for the second element, Plaintiff has not plausibly alleged Defendants Lanum and Clarino were aware of and deliberately indifferent to his medical needs. Plaintiff does not state whether either defendant had personal knowledge of his serious medical need. Additionally, he does not explain what actions they took or failed to take and how those actions rose to the level of deliberate indifference. The only specific allegations Plaintiff makes against these defendants are that Defendant Lanum prescribed Tylenol and/or Tylenol equivalents for his pain and that Defendant Clarino failed to follow up about a possible surgery. *Id.* at 5. Without additional detail to support his claim, these allegations amount to, at best, unsatisfactory care and poor communication and, at worst, medical negligence.

ORDER DECLINING TO SERVE COMPLAINT - 8

In sum, Plaintiff fails to draw the necessary connection between the named defendants' knowledge and the alleged constitutional violation. He also fails to plead sufficient facts showing their actions amounted to a constitutional violation. Therefore, in any amended pleadings, Plaintiff must explain in a short, plain statement exactly what each defendant knew, what they did or failed to do, and how their actions amounted to deliberate indifference to his serious medical need.

*Substantive Due Process (Count I).* Although Plaintiff lists "Due Process" among the possible constitutional injuries he suffered at the hands of WCC medical staff, this claim is more appropriately brought under the Eighth Amendment. *See Crozier v. Endel*, 447 F. App'x 859, 860 (9th Cir. 2011) (affirming dismissal of substantive Due Process claim that was more appropriately brought under the Eighth Amendment). On this point, the Ninth Circuit has explained substantive Due Process claims are unavailing when another constitutional provision provides explicit protections. *See Patel v. Penman*, 103 F.3d 868, 875 (9th Cir. 1996), *overruled in part and on other grounds by Patel v. City of Long Beach*, 786 F. App'x 126 (9th Cir. 2019) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Because Plaintiff's substantive Due Process claim regarding inadequate medical treatment is subsumed by his Eighth Amendment claim, it is unlikely he will be able to cure this deficiency in any amended pleadings.

*Equal Protection (Both Counts).* Plaintiff fails to plausibly allege a violation of his rights under the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Center,* 473 U.S. 432, 439 (1985). However, an allegation that "different persons are treated differently is not enough without more, to [plead] a denial of Equal Protection." *Griffin v. County Sch. Bd. of Prince Edward County,* 377 U.S. 218, 230 (1964).

Instead, a plaintiff must plausibly allege that he was treated differently "because of" his membership to a protected class. *Garnica v. Washington Dep't of Corr.*, 965 F. Supp. 2d 1250, 1275 (W.D. Wash. 2013), *aff'd*, 639 F. App'x 484 (9th Cir. 2016) (quoting *Seltzer–Bey v. Delo*, 66 F.3d 961, 964 (8th Cir.1995)). Therefore, to state an Equal Protection claim, a plaintiff must plausibly allege that a defendant acted with an intent or purpose to discriminate against him based on his membership to a protected class. *See Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (quotations and citations omitted).

      To the extent Plaintiff has attempted to bring an Equal Protection claim, his complaint is deficient for at least two reasons. First, Plaintiff does not allege he suffered intentional discrimination while housed at WCC. Instead, on Count I, Plaintiff alleges he was overlooked by WCC medical staff. Dkt. 7, at 4–5. Similarly, on Count II, he attributes Lt. Donnington's mishandling of his grievances to carelessness and inattention. *Id.* at 6–7. These allegations do not rise to the level of intentional discrimination.

      Second, Plaintiff does not allege any discrimination he suffered was because of his membership to a protected class. More specifically, on Count I, Plaintiff alleges that he was denied access to adequate and timely medical care because of his incarcerated status. But incarceration is not a protected class. *See Garnica*, 965 F. Supp. 2d at 1275. And, on Count II, Plaintiff alleges Lt. Donnington treated his grievances differently than other inmate's grievances. Dkt. 7, at 6–7. However, he does not explain why Lt. Donnington treated him differently. Instead, Plaintiff offers conclusory allegations that his rights have been violated. This is not enough to state a colorable claim for relief.

      *Procedural Due Process (Count II).* For his final constitutional injury, Plaintiff alleges Lt. Donnington violated his procedural Due Process rights by repeatedly mishandling his

ORDER DECLINING TO SERVE COMPLAINT - 10

grievances. Dkt. 7, at 6–7. It is clear Plaintiff does not agree with how Lt. Donnington resolved many of his grievances. Even so, Plaintiff has no stand-alone Due Process rights to a specific, or even an efficient, administrative grievance process. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure."). The denial, rejection, cancellation, delay in processing, or ignoring of a grievance does not constitute a Due Process violation. *See Evans v. Skolnik*, 637 Fed. Appx. 285, 288 (9th Cir. 2015), *cert. dism'd*, 136 S. Ct. 2390 (2016) ("An allegation that a prison official inappropriately denied or failed to adequately respond to a grievance, without more, does not state a claim under § 1983.").

To state a procedural Due Process claim, Plaintiff must plausibly allege the mishandling of his administrative grievances resulted in the deprivation of his liberty or property rights without the procedural protections he is entitled to under law. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Plaintiff does not identify any protected property interests, and, as a lawfully incarcerated person, he retains "only a narrow range of protected liberty interests." *Chappell v. Mandeville*, 706 F.3d 1052, 1062–63 (9th Cir. 2013) (cleaned up); *see also Sandin v. Conner*, 515 U.S. 472, 485 (1995) ("Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.") (citation omitted). As a result, Plaintiff's constitutionally protected liberty interests will only be implicated if he is restrained in some "unexpected manner." *Sandin,* 515 U.S. at 483–84.

To determine whether a prisoner has been restrained in an unexpected manner, the Court considers whether the restraint is "within the normal limits or range of custody which the conviction has authorized the State to impose." *Meachum v. Fano*, 427 U.S. 215, 225 (1976).

ORDER DECLINING TO SERVE COMPLAINT - 11

Generally, a prisoner does not have a liberty interest in remaining in general population. *See Sandin*, 515 U.S. at 485–86 (no liberty interest implicated by 30-days in segregated custody).

Here, Plaintiff's allegations on Count II are disorganized and difficult to follow, but, upon review, he has not identified a constitutionally protected liberty interest at stake on his procedural Due Process claim. If Plaintiff wishes to purse this claim he should take care to identify the specific, constitutionally protected interest at stake for each of his mishandled grievances as well as the specific ways in which a defendant personally prevented him from receiving the procedural protections he is entitled to under law.

### III.  Instructions

Due to the deficiencies described above, the Court will not serve Plaintiff's complaint. If Plaintiff intends to pursue this § 1983 civil rights action, he must file an amended complaint and within it, he must write a short, plain statement telling the Court: (1) the constitutional right Plaintiff believes was violated; (2) the name of the person who violated the right; (3) exactly what the individual did or failed to do; (4) how the action or inaction of the individual is connected to the violation of Plaintiff's constitutional rights; and (5) what specific injury Plaintiff suffered because of the individual's conduct. *See Rizzo v. Goode*, 423 U.S. 362, 371–72, 377 (1976). Each claim for relief must be simple, concise, and direct.

Plaintiff shall present the amended complaint on the form provided by the Court. The amended complaint must be legibly rewritten or retyped in its entirety, it should contain the same case number, and it may not incorporate any part of the previous complaints by reference. The amended complaint will act as a complete substitute for any previously filed complaint, and not as a supplement. Plaintiff should not attach exhibits to the amended complaint and any exhibit will not be considered as part of the amended complaint.

The Court will screen the amended complaint to determine whether it contains factual allegations linking each defendant to the alleged violations of Plaintiff's rights. The Court will not authorize service of the amended complaint on any defendant who is not specifically linked to a violation of Plaintiff's rights.

If Plaintiff fails to file an amended complaint or fails to adequately address the issues raised herein on or before **March 10, 2024**, the undersigned will recommend dismissal of this action.

The Clerk is directed to send Plaintiff the appropriate forms for filing a 42 U.S.C. § 1983 civil rights complaint and for service. The Clerk is also directed to send copies of this Order and *Pro Se* Instruction Sheet to Plaintiff.

Dated this 8th day of February, 2024.

David W. Christel
Chief United States Magistrate Judge