UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RYAN SCOTT ADAMS,<br><br>                Plaintiff,<br>    v.<br><br>BRUCE LANUM, *et al.*,<br><br>                Defendants. | CASE NO. 3:24-CV-5034-KKE-DWC<br><br>REPORT AND RECOMMENDATION<br><br>Noting Date: **March 26, 2025** |

The District Court referred this action, filed pursuant to 42 U.S.C. § 1983, to United States Magistrate Judge David W. Christel. Before the Court are cross-motions for summary judgment filed by Plaintiff Ryan S. Adams and Defendants Bruce Lanum and Adam Clarno. Dkts. 40, 43. Plaintiff alleges Defendants acted with deliberate indifference to his serious medical need. After reviewing the relevant record, the Court finds Plaintiff has not made the requisite showing for summary judgment in his favor and failed to rebut Defendants' showing that no genuine issue of material fact remains in this case. Therefore, the undersigned recommends Plaintiff's Motion for Summary Judgment (Dkt. 40) be denied and Defendants' Motion for Summary Judgment (Dkt. 43) be granted.

REPORT AND RECOMMENDATION - 1

## I. Background

Plaintiff, an inmate currently housed at Washington State Penitentiary ("WSP"), alleges Defendants violated his Eighth Amendment rights by providing inadequate treatment while Plaintiff was housed at Washington Corrections Center ("WCC"). *See* Dkt. 11. Specifically, Plaintiff alleges Defendant Clarno exhibited deliberate indifference to a serious medical need by delaying the initial diagnosis and treatment of a fracture in Plaintiff's right hand. *Id.* at 6–7. As for Defendant Lanum, Plaintiff alleges he exhibited deliberate indifference to a serious medical need by failing to provide proper pain management and by delaying a surgical consultation for Plaintiff's hand injury. *Id.* at 4–5, 10–11. Plaintiff seeks, among other things, monetary damages against both Defendants. *Id.* at 9.

In January 2025, both Plaintiff and Defendants filed Motions for Summary Judgment. Dkts. 40, 43. The parties filed timely responses and replies, and Plaintiff filed a surreply to Defendants' Motion. Dkts. 49, 52, 58, 60.

The parties do not request oral argument in their Motions. Nevertheless, the Court reviewed the record and determined oral argument is not necessary in this case.

## II. Surreply (Dkt. 60)

Plaintiff filed a surreply which includes additional argument. Dkts. 60. Pursuant to Local Civil Rule 7(g)(2), surreplies are limited to requests to strike material contained in or attached to a reply brief. "Extraneous argument or a surreply filed for any other reason will not be considered." *Id*; *see also Herrnandez v. Stryker Corp.*, 2015 WL 11714363, at *2 (W.D. Wash. Mar. 13, 2015). In addition, the Court advised Plaintiff that "no additional briefing on the cross motions for summary judgment will be considered unless filed with leave of court." Dkt. 57 at 2. Plaintiff is attempting to provide additional argument in his surreply, which was filed without

REPORT AND RECOMMENDATION - 2

leave of court. Therefore, the Court declines to consider the surreply (Dkt. 60) in ruling on the Motions for Summary Judgment.

### III. Standard of Review

Summary judgment is proper only if the pleadings, discovery, and disclosure materials on file, and any affidavits, show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

There is no genuine issue of material fact where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." *T.W. Electrical Serv., Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Mere disagreement or bald assertion stating a genuine issue of material fact exists does not preclude summary judgment. *California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). Allegations based merely on the plaintiff's belief are insufficient to oppose summary judgment, as are unsupported conjecture and

REPORT AND RECOMMENDATION - 3

conclusory statements. *See Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). In other words, the purpose of summary judgment "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

When parties file cross-motions for summary judgment, as the parties have done here, each motion "must be considered on its own merits." *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The court must review the evidence submitted in support of each cross-motion. *Id.*; *see also Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011) ("the court must consider each party's evidence, regardless under which motion the evidence is offered"). And, although the parties may each assert there are no uncontested issues of material fact, the Court must determine whether disputed issues of material fact are present. *Fair Housing Council of Riverside County,* 249 F.3d at 1136; *Osborn v. Butler*, 712 F. Supp. 2d 1134, 1148 (D. Idaho 2010).

**IV. Discussion**

In his Second Amended Complaint, Plaintiff alleges that treatment delays and inadequate pain management by Defendants Clarno and Lanum constituted deliberate indifference to his serious medical needs. Dkt. 11 at 4–7, 10–11. Plaintiff's Motion for Summary Judgment is cursory and does not identify particular arguments making judgment in his favor proper. Dkt. 40. In their Motion, Defendants contend they provided Plaintiff with adequate care and did not cause any treatment delays resulting in further injury to Plaintiff. Dkt. 43. Defendants assert, therefore,

that they are entitled to summary judgment dismissing Plaintiff's Second Amended Complaint with prejudice. *Id*.

### A. Deliberate Indifference

"Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain," which is a violation of the Eighth Amendment's guarantee against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation omitted); *see Hudson v. McMillan*, 503 U.S. 1, 6 (1992). An Eighth Amendment deliberate indifference claim has two elements: (1) the plaintiff had a serious medical need and (2) the defendant responded to that need with deliberate indifference. *See McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

For the first element, a medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (quoting *Estelle*, 429 U.S. at 104). The following are examples of serious medical needs: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; [and] the existence of chronic and substantial pain" *Id.* at 1059–60.

For the second element, a plaintiff must show the defendant responded to his serious medical need with deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1970). This second element requires "a purposeful act or failure to act on the part of the defendant." *McGuckin*, 974 F.2d at 1060. In other words, "[a] defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need." *Id.* It is "obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and

REPORT AND RECOMMENDATION - 5

Unusual Punishment Clause[.]" *Wilson v. Seiter*, 501 U.S. 294, 299 (1991). A prison official, accordingly, will be found deliberately indifferent to a prisoner's serious medical needs only if the "official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

"Deliberate indifference is a high legal standard. A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Further, a mere difference of opinion about treatment between plaintiff and prison medical authorities "does not give rise to a § 1983 claim." *Franklin v. St. of Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981). A prisoner must instead show the chosen course of treatment "was medically unacceptable under the circumstances," and was chosen "in conscious disregard of an excessive risk to [the prisoner's] health." *Jackson*, 90 F.3d at 332; *see also Toguchi*, 391 F.3d at 1058.

Lastly, deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or [ ] may be shown by the way in which prison physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). However, a defendant's delay in providing a prisoner treatment amounts to deliberate indifference only when the delay causes substantial harm. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985); *Amarir v. Hill*, 243 F. App'x. 353, 354 (9th Cir. 2007).

### B.     Defendant Clarno

#### 1.     Evidence

Defendants submit declarations from Defendant Clarno, Defendant Lanum, and Dr. Kenneth Sawyer—a non-party and orthopedic consultant for the Washington State Department

of Corrections. Dkts. 44, 45, 47. Attached to each declaration are supporting exhibits from Plaintiff's applicable medical records. Dkts. 44-1– 44-9, 45-1– 45-13, 47-1– 47-4. In addition, Defendants submit an independent medical record review and curriculum vitae from Dr. Christopher L. Olch—an orthopedic surgeon and independent consultant. Dkts. 46-1, 46-2. Plaintiff did not submit evidence when he filed his Motion, and his subsequent evidentiary submissions are copies of medical records submitted as exhibits by Defendants. *See* Dkt. 53. The Court primarily cites the original submission by Defendants but cites duplicative submissions by Plaintiff in parenthesis when applicable.

On March 14, 2023, Plaintiff complained of an injury to his right hand sustained from punching a wall the day prior. Dkt. 44 at 2; Dkt. 44-1 (Dkt. 53 at 7). At that time, Plaintiff was confined in the Intensive Management Unit ("IMU") at WCC with special requirements and restrictions placed on his movement. Dkt. 44 at 2. A nurse assigned to the IMU assessed Plaintiff's hand and reported the information to the WCC medical infirmary located in a separate building. *Id.*; Dkt. 44-1 (Dkt. 53 at 7). Defendant Clarno, who was the medical provider assigned to the treatment room at the WCC infirmary, immediately ordered an x-ray of Plaintiff's hand. Dkt. 44 at 2; Dkt. 44-1 (Dkt. 53 at 7). Given restraints on Plaintiff's movement, however, the x-ray was not performed until the following day on March 15, 2023. Dkt. 44 at 2; Dkt. 44-4 (Dkt. 53 at 10).

Defendant Clarno examined Plaintiff's hand on the same day the x-ray was performed. Dkt. 44 at 2–3; Dkt. 44-1 (Dkt. 53 at 7). Defendant Clarno prescribed acetaminophen for Plaintiff's pain but did not place a splint on Plaintiff's hand as he decided instead to wait until he received the x-ray interpretation and could consult with Dr. Sawyer about an appropriate plan of care. Dkt. 44 at 3; Dkt. 44-2 (Dkt. 53 at 9). It is undisputed the radiologist found a "fracture at

REPORT AND RECOMMENDATION - 7

the second metacarpal head and neck consistent with a boxer's fracture," "soft tissue swelling," and "no dislocation." Dkt. 44-4 (Dkt. 53 at 10).

Defendant Clarno re-examined Plaintiff's hand at a follow-up appointment on March 27, 2023. Dkt. 44 at 3; Dkt. 44-3 (Dkt. 53 at 2). Defendant Clarno noted a delay with the interpretation of March 15 x-ray but the evidence does not show whether he had received and/or reviewed the x-ray at the time of this appointment. Dkt. 44-3 (Dkt. 53 at 2); *see also* Dkt. 44 at 5 (stating he "track[ed] down the x-ray report on March 31st"). After examining Plaintiff, Defendant Clarno recommended a splint, a new x-ray, and an orthopedic consultation with Dr. Sawyer. Dkt. 44 at 4; Dkt. 44-3 (Dkt. 53 at 2). The x-ray machine was not available during the March 27 follow-up appointment, and Plaintiff left the infirmary without getting a splint. Dkt. 44 at 4. Defendant Clarno requested Plaintiff to return as soon as possible to complete treatment or sign a refusal form. *Id*. Plaintiff was next seen by Defendant Clarno on April 3, 2023, at which time he was placed in a volar splint. *Id.* at 5; Dkt. 44-5 (Dkt. 53 at 12). At this visit, Defendant Clarno ordered an orthopedic consultation with Dr. Sawyer and a new x-ray, which was taken on April 4, 2023. Dkt. 44 at 5; Dkt. 44-6; Dkt. 47-1 (Dkt. 53 at 4).

On April 4, 2023, Dr. Sawyer reviewed both x-rays and concluded Plaintiff would not benefit from surgery at that time. Dkt. 47 at 2; Dkt. 47-1 (Dkt. 53 at 4). Dr. Sawyer instead recommended conservative management for Plaintiff's fracture, including immobilization with a radial gutter splint for two weeks, followed by early motion exercises with buddy taping.[1] Dkt. 47 at 2; Dkt. 47-1 (Dkt. 53 at 4). After the orthopedic consultation was complete, Plaintiff's care transitioned from Defendant Clarno to Defendant Lanum. Dkt. 44 at 5; Dkt. 45 at 2.

---

[1] "Buddy taping" refers to the technique of taping neighboring fingers to stabilize an injury.

REPORT AND RECOMMENDATION - 8

X-ray interpretations are typically received within a few days but, in this instance, Defendant Clarno states there was a two-to-three-week delay in receiving the interpretation for the March 15 x-ray of Plaintiff's hand. Dkt. 44 at 3. Plaintiff disputes that there was a delay in receiving the March 15 x-ray interpretation, contending there was no more than a two-day delay as demonstrated by the radiologist's findings signed on March 17, 2023. Dkt. 52 at 1–2; Dkt. 44-4 (Dkt. 53 at 10).

In either case, it is undisputed these findings were reviewed by Defendant Clarno no later than March 31, 2023, and were shared with Dr. Sawyer for his consultation occurring on April 4, 2023. *See* Dkt. 47-1 (Dkt. 53 at 4). Dr. Sawyer testified his treatment recommendations would have been identical had he received the initial x-ray interpretation sooner because the differences between the initial (March 15) and follow-up (April 4) x-ray were negligible. Dkt. 47 at 3. In addition, Dr. Olch provided his medical opinion the initial treatment delay did not negatively affect Plaintiff's injury because his fracture remained stable and unchanged between the initial appointment on March 14, 2023, and second follow-up appointment on April 3, 2023. Dkt. 46-1 at 8. Dr. Olch also concluded it was not an "absolute requirement" for Defendant Clarno to place Plaintiff in a splint right away, "given that the fracture was impacted and had no change in position" based on comparison of the x-rays taken before and after the splint was placed. *Id.*

## 2. Analysis

Plaintiff alleges Defendant Clarno delayed the initial diagnosis and treatment for the fracture in his right hand. Dkt. 11 at 6–7; *see also* Dkt. 52 at 2, 5. Defendants argue there is no genuine issue of fact as to whether Defendant Clarno was deliberately indifferent to Plaintiff's hand injury irrespective of any alleged delays. Dkt. 43 at 11–12, 15–16. The Court agrees with Defendants for two reasons.

REPORT AND RECOMMENDATION - 9

1    First, the evidence does not support Plaintiff's contention that Defendant Clarno acted intentionally to delay the initial diagnosis and treatment for Plaintiff's injured hand. *See Wilson*, 501 U.S. at 299 (it is "obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause"); *Jeffers v. Gomez*, 267 F.3d 895, 907 (9th Cir. 2001) ("[T]o survive summary judgment[, a plaintiff] must put forward specific, nonconclusory factual allegations that establish improper motive.") (citations and quotations omitted). The undisputed evidence instead shows Defendant Clarno took numerous steps to diagnose and treat Plaintiff's injury from March 14 and April 4, 2023, including providing pain medication, ordering multiple x-rays, requesting a medical consultation with Dr. Sawyer, and, eventually, placing Plaintiff's hand in a splint. There is no evidence Defendant Clarno failed to respond when Plaintiff communicated concerns of pain or requested treatment. *C.f. Finley v. Parker*, 253 F. App'x 634, 635 (9th Cir. 2007) (denying summary judgment where the defendant repeatedly refused to add the inmate's name to the "sick call" list, which interfered with his access to treatment and caused the resolution of his dental problem to be delayed).

In his cross-response and reply, Plaintiff contends that Defendant Clarno should have considered surgery right away. Dkt. 52 at 2. However, Plaintiff submits no evidence showing Defendant Clarno's failure to order an immediate surgical consultation "was medically unacceptable under the circumstances." *See Toguchi*, 391 F.3d at 1058 (citations and quotations omitted). While Plaintiff may have preferred an immediate surgical consultation, a mere difference of opinion between him and Defendant Clarno regarding the proper course of treatment is "insufficient, as a matter of law, to establish deliberate indifference." *Id.* (citations and quotations omitted).

REPORT AND RECOMMENDATION - 10

Second, even if Defendant Clarno caused some delay in the initial diagnosis and treatment of Plaintiff's right hand, the evidence does not show such delay resulted in further injury to Plaintiff. *See Shapley*, 766 F.2d at 407. There is no evidence showing Plaintiff experienced increased pain or further injury from the delay related to the initial March 15 x-ray interpretation. Instead, Dr. Olch provides his medical opinion that Plaintiff's fracture remained stable and did not worsen in the period between his initial x-ray and follow-up appointments with Defendant Clarno. Dkt. 46-1 at 8. Because the fracture remained stable during this period, Dr. Olch also states it was not an "absolute requirement" for Plaintiff to be placed in a splint right away. *Id.* Plaintiff does not submit evidence to rebut Dr. Olch's medical opinion, nor does he dispute Dr. Olch's qualifications as an expert witness under Rule 702 of the Federal Rules of Evidence.

Accordingly, the Court finds Defendants have shown no genuine issue of material fact remains as to Plaintiff's deliberate indifference claim against Defendant Clarno.

### C.   **Defendant Lanum**

#### 1.   Evidence

Plaintiff's treatment transferred to Defendant Lanum in early April 2023. Dkt. 45 at 2. On April 3, 2023, Defendant Lanum saw Plaintiff and implemented Dr. Sawyer's recommendations by replacing Plaintiff's splint, instructing him on the proper schedule for buddy taping, and allowing the fracture time to heal in place before referring Plaintiff for a surgical consultation. Dkt. 45 at 2; Dkt. 45-1; Dkt. 47-1 (Dkt. 53 at 4).

During a follow-up examination on May 2, 2023, Defendant Lanum observed mild swelling and noted Plaintiff's compliance with the buddy taping instructions and inconsistent use of the splint. Dkt. 45 at 5; Dkt. 45-1. Plaintiff also reported pain, which prompted Defendant Lanum to order a third x-ray and another consultation with Dr. Sawyer. Dkt. 45 at 2; Dkt. 45-1.

1    The new x-ray was taken on May 2, 2023, and Defendant Lanum consulted Dr. Sawyer soon
2    after. Dkt. 45 at 2–3; Dkt. 45-2; Dkt. 47-2. In comparing all three x-rays taken of Plaintiff's
3    hand, Dr. Sawyer observed there was progressive healing of Plaintiff's fracture, no change in
4    position of bone fragments, and a reduction of soft tissue swelling. Dkt. 47 at 2–3; Dkt. 47-2. Dr.
5    Sawyer recommended Plaintiff continue buddy taping and cease strenuous activities throughout
6    recovery. Dkt. 45 at 3; Dkt. 47-2. Dr. Sawyer also advised it could take at least a year for
7    Plaintiff to reach "maximum symptomatic improvement" and that there may be permanent
8    swelling or pain with some activities. Dkt. 47-2; Dkt. 45-3.

9            From the end of May until September 19, 2023, Plaintiff was transferred to Clallam Bay
10   Corrections Center ("CBCC"). Dkt. 45 at 3. On September 19, 2023, Plaintiff was involved in a
11   physical altercation at CBCC, and transferred back to WCC the same day. *Id.* On September 27,
12   2023, Plaintiff presented for sick call for pain in his right hand, wrist, and left rib and was seen
13   by Defendant Lanum. Dkt. 45 at 3; Dkt. 45-6 at 2–3. Defendant Lanum prescribed naproxen and
14   acetaminophen to address his reported pain. Dkt. 45 at 3; Dkt. 45-6 at 2–3. He also ordered an x-
15   ray, which showed no new fracture or dislocation of Plaintiff's right hand and wrist. Dkt. 45 at
16   3–4; Dkt. 45-7 at 2–3. The x-ray also showed the preexisting fracture in Plaintiff's right hand
17   was healed. Dkt. 45 at 4; Dkt. 45-7 at 2–3.

18           Plaintiff continued to report pain and impaired functionality in November and December
19   2023, and Defendant Lanum ordered further consultations with Dr. Sawyer. Dkt. 45 at 4–5; Dkt.
20   47-3; Dkt. 47-4. In particular, Defendant Lanum asked Dr. Sawyer to advise if immobilization
21   was required and if a surgical consultation would be appropriate. Dkt. 45 at 4–5; Dkt. 47-3; Dkt.
22   47-4. Dr. Sawyer advised that immobilization was unnecessary but recommended a surgical
23   consultation in light of Plaintiff's continued reports of pain and the results of a functional
24   assessment. Dkt. 45 at 4–5; Dkt. 47 at 3; Dkt. 47-3; Dkt. 47-4. Dr. Sawyer explained it was

unclear if Plaintiff needed more aggressive physical therapy to improve his hand's functionality or if surgical intervention was necessary to address a potential mechanical block. Dkt. 45 at 5; Dkt. 47 at 3; Dkt. 47-4.

Defendant Lanum entered a referral for a surgical consultation on December 15, 2023. Dkt. 45 at 5. The referral was approved; however, Plaintiff was transferred to WSP before the consultation occurred. *Id.* Once transferred, responsibility for Plaintiff's medical care was assumed by a WSP medical provider and Plaintiff was provided a surgical consultation in March 2024. *Id.* The consulting orthopedic surgeon did not recommend surgery and referred Plaintiff to physical therapy. Dkt. 46-1 at 6–7.

As will be discussed in greater detail below, Dr. Olch provided his medical opinion that Defendant Lanum provided appropriate treatment and pain management throughout the course of Plaintiff's care. Dkt. 46-1 at 8–9.

2.  <u>Analysis</u>

Plaintiff alleges Defendant Lanum exhibited deliberate indifference to Plaintiff's hand injury by delaying a surgical consultation and by failing to provide adequate pain management. Dkt. 11 at 4–5, 10–11; *see also* Dkt. 52 at 3. Defendants argue there is no genuine issue of fact as to whether Defendant Lanum was deliberately indifferent to Plaintiff's hand injury on either ground. Dkt. 43 at 12–16. The Court agrees with Defendants.

a.  *Surgical Consultation*

Plaintiff first alleges Defendant Lanum unduly delayed a surgical consultation for his hand and instead chose to wait and see how Plaintiff's injury would heal in place. Dkt. 11 at 4–5, 10–11. Additionally, Plaintiff argues Defendant Lanum caused further delays by failing to recommend a medical hold that would have allowed Plaintiff to attend a surgical consultation scheduled in January 2024 rather than transfer to WSP. *Id.*; Dkt. 52 at 3. As with Plaintiff's

claim against Defendant Clarno, the evidence does not show any alleged delays caused by Defendant Lanum resulted in further injury to Plaintiff.

With regard to Defendant Lanum's decision to observe the progression of Plaintiff's healing before ordering a surgical consultation, Dr. Olch opined that Defendant Lanum acted appropriately. Dkt. 46-1 at 8. For his part, Dr. Sawyer maintains a surgical consultation was only appropriate after Plaintiff continued to report pain and functional impairment after his fracture had healed. Dkt. 47 at 3. A "wait and see" treatment plan like that adopted by Defendant Lanum may result in deliberate indifference where medical professionals refuse to deviate from the plan to address a prisoner's deteriorating condition. *See Stewart v. Aranas*, 32 F.4th 1192, 1195 (9th Cir. 2022). These, however, are not the circumstances of this case. The undisputed evidence demonstrates Plaintiff's fracture showed signs of healing in May 2023 and continued to heal as reflected in subsequent x-rays. And, when Plaintiff continued to complain of pain after the fracture healed, Defendant Lanum inquired about a surgical consultation. Dkt. 45 at 4–5; Dkt. 47-3; Dkt. 47-4. Critically, the surgical consultation that took place in March 2024 found surgery was not appropriate for Plaintiff's injury. Dkt. 45 at 5; Dkt. 46-1 at 6–7. Plaintiff submits no evidence showing these results would have differed if the surgical consultation occurred earlier.

Next, Plaintiff's argument that Defendant Lanum should have recommended a medical hold to prevent further delays is also unavailing. The Ninth Circuit addressed similar circumstances in *Hodges v. Corizon Health, Inc*., 837 F. App'x 466, 469 (9th Cir. 2020). In affirming the district court's grant of summary judgment, the Ninth Court found the plaintiff failed to show he suffered any harm when his transfer to a different correctional facility caused him to miss an angiogram recommended by his cardiologist. *Id.* (citing *Shapley*, at 766 F.2d at 407). The same reasoning applies here—Plaintiff presents no evidence showing he was harmed

REPORT AND RECOMMENDATION - 14

when Defendant Lanum failed to recommend a medical hold or otherwise prevent Plaintiff from missing a surgical consultation because of his transfer to WSP.

      b.  *Pain Management*

Plaintiff next alleges Defendant Lanum failed to provide sufficient pain management for his injury. Dkt. 11 at 4–5, 10–11. The relevant evidence shows opioids were not an appropriate pain management option for Plaintiff's particular injury or in light of his heightened risk for opioid addiction and abuse, and Plaintiff has not submitted evidence to the contrary. In particular, Dr. Olch stated that the pain medications prescribed by Defendant Lanum were appropriate for Plaintiff's particular injury and that opioid medications were not indicated for this type of injury. Dkt. 46-1 at 9. Dr. Olch further noted inconsistencies between Plaintiff's reported symptoms and objective clinical findings, concluding that there was no medical reason for Plaintiff's persistent complaints of significant pain given the fracture's progression to healing beyond May 2023. *Id.* Additionally, Defendant Lanum states that, as part of the surgical consultation Plaintiff received in March 2024, Plaintiff was assessed at a high-risk of opioid abuse or addiction using the Opioid Risk Tool. Dkt. 45 at 6.

Even if Plaintiff presented evidence showing opioids were an appropriate option for treating his pain, a difference of opinion on appropriateness of opioid pain medication does not establish deliberate indifference to a serious medical need. *Jackson*, 90 F.3d at 332 (a prisoner-plaintiff must show the chosen course of treatment "was medically unacceptable under the circumstances"); *see also Fausett v. Leblanc,* 553 F. App'x 665, 667 (9th Cir. 2014) (decision not to provide plaintiff with Valium as prescribed after spinal fusion surgery, but instead to provide substitute medicine along with other pain medication, did not constitute deliberate indifference); *Gauthier v. Stiles*, 402 F. App'x 203 (9th Cir. 2010) (prisoner's disagreement with the dosage and type of pain medication administered after surgery did not rise to the level of deliberate

REPORT AND RECOMMENDATION - 15

indifference); *Shiira v. Hawaii*, 706 F. App'x 436, 437 (9th Cir. 2017) ("By itself, a failure to administer narcotic pain medication does not constitute a constitutional violation," particularly where alternative pain medications were offered).

Accordingly, the Court finds Defendants have shown no genuine issue of material fact remains as to Plaintiff's deliberate indifference claim against Defendant Lanum.

**V.      State Law Claims**

Defendants assert that, to the extent Plaintiff's claims can be interpreted as a state law claim for medical negligence, summary judgment should still be granted. Dkt. 43 at 19–20. The Court does not interpret the Second Amended Complaint to allege any state law claims. However, if Plaintiff was attempting to assert a state law claim, the Court recommends supplemental jurisdiction be declined as to any potential state law claims.

A district court may exercise supplemental jurisdiction over state law claims arising from the same set of operative facts that supports a federal claim. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639–40 (2009) (citing 28 U.S.C. §§ 1367(a), (c)); *Artis v. District of Columbia*, 583 U.S. 71 (2018). However, "[w]hen district courts dismiss all claims independently qualifying for the exercise of federal jurisdiction, they ordinarily dismiss as well all related state claims." *Artis*, 583 U.S. at 74. *See also Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (suggesting that a district court may, but need not, decide *sua sponte* whether to continue exercising supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) once all federal law claims have been dismissed). As stated above, the Court finds Plaintiff has failed to establish his federal claims and recommends dismissal of those claims with prejudice. To the extent Plaintiff intended to allege a state law negligence claim, that claim raises issues solely of state law and the state courts will therefore be more familiar with the law governing the claim.

REPORT AND RECOMMENDATION - 16

Therefore, as there are no federal claims remaining, the Court finds it appropriate to decline the exercise of supplemental jurisdiction over any potential state law claims.

## VI. Conclusion

For the reasons set forth above, the undersigned recommends Plaintiff's Motion for Summary Judgment (Dkt. 40) be denied, Defendants' Motion for Summary Judgment (Dkt. 43) be granted, and judgment be entered in favor of Defendants Bruce Lanum and Adam Clarno on Plaintiff's Eighth Amendment Deliberate Indifference claims asserted in the Second Amended Complaint.[2]

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit not later than **fourteen (14) days** from the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar **fourteen (14) days** from the date they are filed. Responses to objections may be filed by **the day before the noting date**. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **March 26, 2025**.

Dated this 11th day of March, 2025.

_____
David W. Christel
United States Magistrate Judge

---

[2] Defendants further argue the Court should grant summary judgment because Defendants are entitled to qualified immunity on the § 1983 claims. Dkt. 43. Because the Court recommends granting Defendants' Motion for Summary Judgment on other grounds, the Court declines to consider these additional defenses.